UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

vs.                                            CASE NO. 1:21-cr-00648-001
                                               Sr. Judge Reggie B. Walton

ADAM JOHNSON

**DEFENDANT ADAM JOHNSON'S SENTENCING MEMORANDUM
AND MOTION FOR DOWNWARD VARIANCE**

Adam Johnson (Adam") submits this Sentencing Memorandum and Motion for a Variance for this Court's consideration. Adam requests this Court to review the circumstances of his case pursuant to 18 U.S.C. § 3553 and impose a sentence of time served followed by a term of probation of 12 months, $500 restitution and 100 hours of community service. [1]

**STATEMENT OF FACTS**

1. On January 8, 2021, Adam was arrested in the Middle District of Florida for various charges arising out of the January 6, 2021 disturbance at the United States Capitol. (PSR at ¶ 6).

2. Adam was released on January 11, 2021 and has been on pre-trial supervision in the Middle District of Florida.

3. On November 22, 2021, Adam appeared before this Court and pled guilty to Count One of an Information charging him with Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority in violation of 18 U.S.C. Section 1752(a). (PSR at ¶ 1-4).

---

[1] Adam spent the weekend in jail after he self-surrendered and before his detention hearing in Tampa.

4. The Presentence Report (PSR) calculates Adam's total offense level as a level 4 with a criminal history category of I (PSR at ¶¶ 41-50). Because there is no mandatory minimum penalty, Adam faces a guideline sentencing range of 0-6 months of incarceration. (PSR at ¶ 93). The Guidelines provide that if a term of probation is imposed, it should not be more than three (3) years. (PSR at ¶ 103).

## MEMORANDUM OF LAW

This memorandum explains why a variance is appropriate in Adam's case pursuant to Section 3553.

## RATIONALE FOR A VARIANCE

### I. Booker and its Progeny Provides the Court with the Discretion to Impose a Sentence of Time Served/Term of Probation

A district court's discretion is no longer limited by the guidelines since its matrix is now considered merely advisory. *United States v. Booker*, 543 U.S. 220, 245-67 (2005). Thus, a court is now unencumbered in its ability "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 53 (2007) (quoting *Koon v. United States*, 518 U.S. 81 (1996)).

Congress has identified four "purposes" of sentencing: punishment, deterrence, incapacitation, and rehabilitation. 18 U.S.C. § 3553(a)(2). To achieve these ends, § 3553(a) requires sentencing courts to consider not only the advisory Guidelines range, but also the facts of a specific case through the lens of seven factors, including:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed --
(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)   to afford adequate deterrence to criminal conduct;
(C)   to protect the public from further crimes of the defendant; and
(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3)   the kinds of sentences available;
(4)   the kinds of sentence and the sentencing range established ... ;
(5)   any pertinent [Sentencing Commission] policy statement ... ;
(6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7)   the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1)-(7).

Against this backdrop of factors, Adam submits that a variance is warranted in his case.

**II.   An Examination of the § 3553 Factors Establishes that a Variance is Warranted in Adam Johnson's Case**

The following sections analyze the § 3553 factors against the factual backdrop of Adam's case. Such an analysis is critical because it underscores the inherent necessity of a variance in this matter.

**1.   Nature and Circumstances of the Offense**

On January 5, 2022, Adam flew from Florida to Washington, D.C. to attend his first political rally with a friend. The next day he made the life-changing decision to unlawfully enter the U.S. Capital and remain in the building for about 30 minutes. While inside, he posed for a photograph with a lectern in the Senate Rotunda.[2] That photograph went viral and within days Adam was identified, charged with various federal crimes, and taken into custody. He's spent

---

[2] The lectern is government property used by U.S. Congresswomen Nancy Pelosi but Mr. Johnson was not aware of this fact when he moved it. Mr. Johnson did not remove the lectern from the U.S. Capitol. Instead, he moved it from an unsecured cloak room to the Rotunda where he left it.

the past year or so on pre-trial release, with plenty of time to contemplate his actions. As he stands before the Court today, he deeply regrets his participation in the breach of the U.S. Capitol on January 6, 2021. The damage and violence inflicted on that date by others is contrary to everything he believes in. He has no history of violence and does not condone it. While his actions on January 6, 2021 did not involve the destruction of government property or physical violence against law enforcement, he understands that his entry in the U.S. Capitol, at times yelling and screaming, exacerbated a terrible situation.

Adams' actions inside the Capitol on January 6th are detailed in the Statement of Facts and the PSR. (PSR at ¶ 7-32). What has not been made public is that almost immediately after he was contacted by the FBI, he self- surrendered, accepted personal responsibility for his actions. He gave FBI agents a detailed account of his travel to and from Washington, D.C., retracing each step he took inside the Capitol. He also admitted to the authenticity of photographs and videos of him inside the Capitol. He provided his cell phone to the FBI and admitted that he attempted to delete images and social media posts on January 6th and 7th. Furthermore, he provided the FBI with passwords and log-in information to all of his social media accounts. During a subsequent interview he reviewed maps of the Capitol and video footage from January 6. Later, he relinquished a disassembled and inoperable rifle in his possession. After prosecutors had adequate time to evaluate Adam's conduct and cooperation, they decided not to proceed with felony charges and instead charged him with a misdemeanor pursuant to a plea agreement.[3]

---

[3] Right or wrong, Adam has received significant attention from the media. To ensure that he does not profit from his actions on January 6, 2021, Adam has agreed to turnover to the United States any compensation he receives

## 2. History and Characteristics of Adam Johnson

Adam Johnson is a devoted husband and father of five boys, ages 14, 13, 12, 9 and 6. He is happily married to his spouse, who is a medical doctor. While his wife practices medicine, Adam serves as the primary caregiver for the children. He prepares the boys' meals, gets them ready for school, transports them to and from school and extra-curricular events, and helps them with their homework each night. As one of his neighbors explains:

> "Adam's relationship as a father to his children and a husband to his wife are above reproach. His children are intelligent individuals. Adam has raised and taught them to be respectful human beings. Adam maintains his home and its appearance far above our community expectations. I am proud to have him and his family as a neighbor."
> **Exhibit A, Letters of Support, Letter from Jeffrey Fero.**

One of Adam's closest friends echoes these thoughts and wrote:

> "Over the last several years I have become very close to Adam and his family. One of Adam's most prominent qualities is that he is a devoted family man. I cannot think of a better example of a loving and dedicated husband and father. Adam has five children, all of whom are intelligent, kind mature and will grow to be assets to their communities. Adam take a very active role in raising his children. He assures his children achieve high grades by instilling self-motivation and passion for learning. He sets healthy expectations and boundaries, the result shows in the behavior of his children, all five are exceptionally behaved and well spoken, their maturity level exceeds their peers, and all have hobbies and passions that Adam enthusiastically fosters. Adam is a shining example to his community of what a family man can truly do for his loved ones, his careful attention, steady moral guidance, and supportive manner encourages those around him to challenge themselves as to what they can achieve in self-betterment."
> **Exhibit A, Letters of Support, Letter from Kathryn Young**

He is a skilled woodworker and participates in jiujitsu, an activity which the entire family practices. He has no criminal history and has never been affiliated with any individuals or

---

for writing or speaking about the incident. Adam suggested donating the profits to a charity like the Wounded Warriors or Tunnel to Towers but the idea was unworkable.

5

groups who advocate violence against the United States or law enforcement. In fact, many of his friends are police officers or deputy sheriffs who supported him even after his arrest on the instant charges.[4]

It's worth noting that once he and his home were identified, both he and his wife received a number of death threats which were of concern to the FBI (PSR at ¶ 40). His wife's medical practice suffered financially and some of Adam's oldest friends will no longer speak to him or his family. He has been on pre-trial supervision for the past year and complied the Court's restrictions. During these difficult times, Adam has declined numerous invitations for personal appearance and instead focused on his family and maintained his good character.

> "Although all people have momentary lapses in judgement, these moments are few for Adam. There are many moments of Adam's life that can be looked at individually to render a definition of his character, the great majority of these moments would leave you with character descriptions such as kind, compassionate, honest, dedicated to others, generous, and virtuous. Adam is best described as a person that is dedicated to giving back to, whatever community he enters, whether it is in schools, his neighborhood community, his friends, or his family. He finds how he can best contribute in a positive way. Even in the face of all his difficulties over the last year, he has kept much his focus on the personal growth of not just himself, but of his family members and friends as well."
> **Exhibit A, Letters of Support, Letter from Kathryn Young**

In determining Adam's sentence, this Court may consider that he is an excellent father to his five children. *See e.g., United States v. Pauley,* 511 F.3d 468 (4th Cir. 2007) (affirming 42-month sentence for defendant convicted of possession of child pornography with an advisory guideline range of 78-97 months in part because "besides the criminal conduct at issue, Pauley was a . . . good father"). Furthermore, this Court should also consider the significant and

---

[4] When Adam was first arrested a website was established for his legal defense. (PSR at ¶ 90A). Adam had no involvement with the website and only about $1,000 was raised. The money was returned to the contributors.

negative impact that incarceration would have on his sons.  See, e.g, Rosalyn D. Lee et al, The Impact of Parental Incarceration on the Physical and Mental Health of Young Adults, Pediatrics at 1188-1195 (April 2013) (stating that positive and significant associations were found between parental incarceration and health and mental issues including, but not limited to, depression, posttraumatic stress disorder, anxiety and fair/poor health).

### Adam Johnson has a Lesser Degree of Culpability than Others

Although Adam is fully culpable for his crimes, his actions on January 6, 2021 and afterwards mitigate his blameworthiness for his actions. The degree of a defendant's blameworthiness "is generally assessed according to two kinds of elements: the nature and seriousness of the harm caused or threatened by the crime; and the offender's degree of culpability in committing the crime, in particular, his degree of intent (mens rea), motives, role in the offense, and mental illness or diminished capacity." Richard S. Frase, Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: "Proportionality" Relative to What?, 89 Minn.L. Rev. 571, 590 (Feb. 2005). Applying these factors to Adam's circumstances establishes that he lacks the same level of culpability as those individuals who entered the Capitol to destroy property, harm others and hijack the political process. His decision to cooperate with law enforcement arguably saved them valuable investigative and prosecutive resources that are best utilized against the violent individuals there that day. Unfortunately, he received considerable attention simply because the lectern belonged to Speaker of the House, Nancy Pelosi.  Arguably, if he latched onto some other piece of government furniture for his photo opportunity jail time would not even be a consideration.

**Adam Johnson's Cooperation with the Government**

Although Adam cooperated with the government, it did not rise to the level of substantial assistance under USSG 5K1.1. Essentially, Adam gave the FBI a full confession very early on. In fact, he may have been one of the first January 6, 2021 defendants to accept responsibility. While he was truthful, he lacked the information that the government wanted regarding the disruptive threat groups and individuals that were present that day.

And therein lies the rub, as well as the inherent irrationality and existentialism, of the federal criminal justice system. The federal system rewards the most culpable since they are the ones who have the most to offer in the marketplace of human bartering referred to as substantial assistance. As United States District Judge Roger Vinson has noted, "people who can offer the most help to the government are the most culpable. So they get reduced sentences while the small fry, the little workers who don't have that information, get the mandatory sentences." John Tierney, For Lesser Crimes, Rethinking Life Behind Bars, N.Y. Times (Dec.11, 2012), available at http://www.nytimes.com/2012/12/12/science/mandatory-prison-sentences-face-growing-skepticism.html (last visited Sept. 10, 2013). The absurdity of a regime that favors the most culpable is revealed in the context of Adam's case as he faces punishment, notwithstanding his lesser culpability.

Although the government has indicated it will not file a motion under USSG §5K1.1, Adam Johnson respectfully submits that this Court should consider his assistance to the government in support of a variance under § 3553(a). *See United States v. Blue*, 557 F.3d 682, 686 (6th Cir. 2009)(stating that post-Booker, "the government's failure to file a Section 5K1.1

departure does not necessarily preclude a sentencing court from taking into account substantial assistance when considering the appropriate sentence in light of the Section 3553(a) factors."); *United States v. Doe*, 213 Fed.Appx. 660, 663 (10th Cir. Jan. 12, 2007)(unpub)(holding that district court should address cooperation as part of its §3553(a) analysis even in absence of a 5K1.1 motion when raised by the defendant); *United States v. Ochoa-Ramos*, 2008 WL 2062341, at *3 (E.D.Wis. 2008)(noting the ability to consider cooperation with the government as evidence of defendant's character under §3553(a) beyond a reduction under §3E1.1, even in the absence of a §5K motion from the prosecution). *See also Jaber,* 362 F. Supp. 2d 381. In the end, Adam Johnson's effort to assist the government support a variance since his actions demonstrate his acceptance of responsibility for his criminal conduct and his substantial attempt to make amends for his actions.

### 3. The Need for the Sentence Imposed

#### A. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense

In imposing "just punishment" for an offense, a sentencing court should not disregard the additional penalties and hardships that will accompany Adam's conviction. See Hugh LaFollette, Collateral Consequences of Punishment: Civil Penalties Accompanying a Formal Punishment, 22 J. of Applied Phil., 241, 244-46 (2005)(discussing and critiquing on proportionality grounds retributivist justification of collateral consequences); Jeremy Travis, Invisible Punishment: An Instrument of Social Exclusion, in Invisible Punishment: The Collateral Consequences of Mass Imprisonment (Marc Mauer & Meda Chesney-Lind eds., 2002). Although Adam recognizes the seriousness of his offense, he respectfully submits that he has already received and will be subject to substantial ridicule, threats, retaliation, and criticism for

9

his actions on January 6, 2021.  Because of the Internet, these consequences will follow him for the rest of his life.

### B. To afford adequate deterrence to criminal conduct

A punishment of imprisonment is not necessary to further the § 3553 factor of general deterrence since there is no correlation between punishment and reductions in crime. See Gary Kleck and J.C. Barnes, Deterrence and Macro-Level Perceptions of Punishment Risks:  Is There a "Collective Wisdom"?, 59 Crime & Delinquency 1006, 1031-33 (2013).  Kleck and Barnes' study concludes:

> "there is generally no significant association between perceptions of punishment levels and the actual levels of punishment that the criminal justice system achieves. This in turn implies that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms, because the fundamental link between actual punishment levels and perceptions of punishment levels appears to be weak to nonexistent."
> Id. at 1031.

The United States Department of Justice agrees with the conclusion that incarcerating defendants is not an effective means of deterrence.  See U.S. Dept. of Justice, Nat'l Inst. of Justice, Five Things About Deterrence (July 2014).  In fact, the Department of Justice finds that even increasing the severity of punishment does little to deter punishment. See Id.   In the absence of a deterrent effect, Adam submits that a sentence of imprisonment is not necessary in his case.

### C. to protect the public from further crimes of the defendant;

As in the case of general deterrence, the empirical evidence does not establish a relationship between sentence length and specific deterrence, regardless of the type of crime. David Weisburd et al., Specific Deterrence in a Sample of Offenders Convicted of White-Collar

Crimes, 33 Criminology 587 (1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment); Donald P. Green & Daniel Winik, Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame").

Nevertheless, the need to protect the public from future crimes by Adam is not an issue since he poses a low risk of recidivism. As previously noted, Adam has no criminal history which places him in a Criminal History Category I. As a first-time offender, Adam poses a lower risk of recidivism. In imposing the least sentence sufficient to account for the need to protect the public from further crimes of Adam, this Court should consider the statistically low risk of recidivism presented. *See United States v. Urbina, slip op.*, 2009 WL 565485, *3 (E.D. Wis. Mar. 5, 2009) (considering low risk of recidivism indicated by defendant's lack of criminal record, positive work history, and strong family ties); *United States v. Cabrera*, 567 F. Supp. 2d 271, 279 (D. Mass. 2008) (granting variance because defendants "with zero criminal history points are less likely to recidivate than all other offenders"). Finally, in considering a variance in this case, this Court should consider the length of time that Adam abstained from criminal conduct prior to his commission of the instant offense. *United States v. Ward*, 814 F. Supp. 23, 24 (E.D. Va. 1993) (granting departure based on defendant's age as first-time offender since guidelines do

not "account for the length of time a particular defendant refrains from criminal conduct" before committing his first offense).

### D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

A significant § 3553(a) sentencing consideration is the need to provide defendants with correctional treatment in the most effective manner. See § 3553(a)(2)(D). Adam, however, is not such a defendant.  He is a stable individual, without any drug or alcohol issues and he would not benefit from treatment in a custodial setting.

### 4. The Kinds of Sentences Available

A mandatory minimum sentence does not apply in this case, thus a sentence below the advisory guideline range is permissible-for either a term of imprisonment or a term of probation.

### 5-6. The Kinds of Sentences and the Guideline Sentencing Range Established and any Pertinent Sentencing Commission Policy Statements

Although the impact of the guidelines on a court's sentencing discretion has been discussed in Section I, supra, the critical question in Adam's case is the exact weight this Court should give to the guidelines. As recognized in *Gall,* district courts "may not presume that the Guidelines range is reasonable." 552 U.S. at 49, 128 S. Ct. at 597. Thus, mitigating circumstances and substantive policy arguments that were formerly irrelevant in all but the most unusual cases are now potentially relevant in every case.

### 7. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

According to a recent filing by the DOJ in another Capitol 6th prosecution, a number of individuals charged with violating Section 1752(a)(1) have avoided significant jail time. **See**

**Exhibit B, Capital 6, 2021 Sentencing Table filed in Case No. 1:21-CR-581**. As this Court can see, Rachel Pert was sentenced to 24 months' probation, 100 community service; Dana Winn got 5 weekends or 10 days in jail, 12 months' probation and 100 hours community service; Kevin Cordon received 12 months' probation, 100 hours community service; Felipe Marquez was sentenced to 3 months' home detention and 18 months' probation; and Gracyn Courtright got 1 month in jail, 12 months' supervised release, and 60 hours community service. *Id.* Additionally, a number of people charged with Section 5104 violations received only probation.

    **8.**    **The Need to Provide Restitution to Any Victims of the Offense.**

Restitution of $500 is applicable in this case. (See PSR at ¶ 110).

C**ONCLUSION**

As the foregoing establishes, this Court should apply a variance Adam Johnson below the applicable guideline range of 0-6 months' imprisonment and impose a sentence of time served, 12 months' probation, 100 hours of community service and $500 restitution. Because the decision in Booker has made the Guidelines advisory and the parsimony clause of 18 U.S.C. § 3553(a) the paramount consideration, Adam Johnson respectfully submits that a variance is appropriate pursuant to this significant and paramount sentencing statute.

By:    */s/ Dan Eckhart*    */s/ David Bigney*
DAN ECKHART, Esq.    DAVID BIGNEY, Esq.
FL Bar No. 488674    FL Bar No: 132454
200 E. Robinson St., Ste. 1150    215 East Livingston Street
Orlando, FL. 32801    Orlando, Florida, 32801
dan@daneckhartlaw.com    dbigney@bigneylaw.com
(407) 276-0500    (407) 425-6068

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 18, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all parties listed on the Electronic Case Filing (ECF) System.

By:   <u>*/s/ Dan Eckhart*</u>      <u>*/s/ David Bigney*</u>
         DAN ECKHART           DAVID BIGNEY

14